UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Civil No. 12-40025 TSH |
| JAMES B. HUGHES, JAYNE M. HUGHES, and THE MASSACHUSETTS DEPARTMENT OF REVENUE, | ) |
| Defendants. | ) |

September 15, 2014

**Introduction**

The United States seeks a judgment against the Defendant James B. Hughes ("Hughes") for his 1999, 200, 2001, 2002, 2003, 2004 and 2006 federal income tax liabilities. In addition, they seek to establish federal tax liens on three properties belonging to Hughes and his sister Jayne Hughes who is also a defendant. They have moved for summary judgment against both. For the reasons set forth below, that motion is denied.

**Background**

For the seven tax years in question Mr. Hughes elected not to file any federal income tax returns. This failure prompted the United States to file Certificates of Assessment, Payments, and Other Specified matters ("Certificates of Assessment") for each year in question. These Certificates of Assessment, the United States argues, are a substitute for tax returns, presumptive proof of the tax due and shift the burden of proving otherwise to the taxpayer. After the United States brought this lawsuit, Hughes proffered tax returns for the years in question. These tardy

tax returns show a zero tax liability as opposed to the United States assessments of slightly more than $1,600,000.00. Because of the preclusive effect of the Certificates of Assessment, the United States refused to accept for filing Hughes' tax returns. In addition, Hughes commissioned the opinion of the accountant who prepared the returns to testify as an expert witness that Hughes owes no taxes. That witness, Patrick Crowley, prepared the late returns largely from two sources; brokerage records given to him by Hughes, and Jayne Hughes' tax returns which showed rental income from the three residential properties that Hughes owns jointly with Ms. Hughes[1]. Hughes has submitted Crowley's opinion in the form of an affidavit in opposition to this motion.

The brokerage records are voluminous, approximately 750 pages, and some date back to the mid-1990's. According to Hughes they are the original records that he received from the brokerage houses via United States mail. They were presented to the court in more or less chronological order and reflect purchases and sales of stocks and bonds from many brokerage houses. These records are significant to Hughes because they supply the cost basis for the stock sales. Hughes contends that the IRS prepared the substitute returns based in large part on 1099s issued by the brokerage firms reporting the sale of stocks and bonds without consideration of the cost basis.

## Discussion

*Standard of Review*

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no

---

[1] These rental properties were inherited by Defendants from their father. It is these three properties upon which the United States seeks a tax lien.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 153 (1st Cir. 2009). The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted). "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted). The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences". *Id.* (citation to quoted case omitted). "'The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." ' " *Id.* (citation to quoted case omitted).

The United States' argues that the Certificates of Assessment establish a prima facie case against Hughes which is not rebutted by the late proffered tax returns, third party brokerage records or his sister's tax returns because they are all inadmissible hearsay. They further argue

that Patrick Crowley's opinion does not defeat their request for summary judgment because his opinion relies upon these inadmissible documents.

*The Certificates of Assessment*

The Secretary of the Treasury has the authority to "make inquiries, determinations, and assessments of all taxes." 16 U.S.C. § 6201. In order to issue an assessment regarding a tax deficiency, the Internal Revenue Service (IRS) must provide a Certificate of Assessment and Payment, more commonly known as a Form 4340. *United States v. John*, F.Supp.2d 230, 234 (W.D.N.Y. 2003) (citing *United States v. Kyser*, 78 A.F.T.R.2d 96-6737, 1996 WL 528534, *1 (W.D.N.Y. Sept. 11, 1996)). It is well-established that tax assessments pursuant to Form 4340 are presumed correct and therefore obligates the taxpayer to provide sufficient evidence to contradict the tax liability. *United States v. Rexach*, 482 F.2d 10, 17 (1st Cir. 1973) (reasoning that the burden is always on the taxpayer so not to encourage taxpayer inaction and ultimately impose huge litigation costs on the government); *United States v. Berk*, 374 B.R. 385, 391-392 (D.Mass. 2007); *United States v. Chila*, 871 F.2d 1015, 1018 (11th Cir. 1989) (finding that a Certificate of Assessments and Payments established *prima facie* proof of a valid tax assessment); *United States v. Barnes*, 883 F.Supp.2d 1156, 1163 (M.D.F.L. 2011). In order to meet the burden of proof, the taxpayer must present "specific evidence sufficient to overcome the 'presumption of correctness.'" *U.S. v. Berk*, 374 B.R. at 391 (citing *Fulle v. United States*, No. 88-893-MLW, 1994 WL 568842, at *2 (D.Mass. Oct. 5, 1994)). When a certified assessment is challenged, the taxpayer must prove by a preponderance of the evidence that the IRS erred in its calculations. *U.S. v. Barnes*, 883 F.Supp.2d at 1163 (citing *Bone v. Comm'r*, 324 F.3d 1289, 1293 (11th Cir. 2003)).

*Whether the brokerage record are admissible under the third party records exception.*

Hughes reliance upon his brokerage records and portions of his sister's tax returns all implicate hearsay rules. Fed. R. Civ. P. 56(c)(4) requires that: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, *set out facts that would be admissible in evidence*, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56. (emphasis supplied). Both parties agree that the records in question are hearsay. What is at issue is whether they are admissible under any exception to the hearsay rule. The parties have expended a lot of energy arguing the applicability of Fed.R.Evid. 803(6), *Records of a Regularly Conducted Activity*, or the often incorrectly labeled "Business Records Exception." That exception provides:

> A record of an act, event, condition, opinion, or diagnosis (is admissible) if:
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803

The United States argues that the brokerage records are inadmissible because they cannot be properly authenticated and cannot be introduced through the testimony of a "custodian or other qualified witness." The Defendant urges me to adopt an exception to the exception; namely

that in the circumstances of this case that I allow the records into evidence without receiving testimony from the custodian of the records.[2] This "third party exception" makes certain discreet, narrow classes of records admissible because the circumstances of their generation, receipt, storage and usage all demonstrate that they are trustworthy. The test for whether third party business records are admissible is threefold: The records must have been incorporated into the records of the offering party; the business must rely on the accuracy of the contents of the documents; and there must be circumstances which indicate that the records are trustworthy. United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992).

It is the first element upon which this argument fails, i.e., the brokerage records' incorporation into Hughes' records. In those cases which have admitted third party records, the reliability of the records depended upon whether the data entered by a third party was "so intimately integrated into" the records of the offering party that "they were reliable enough to be admissible", Doe, supra at 223. See also, F.T.C. v. Direct Marketing Concepts, Inc., 624 F.3d 1, 17 n. 15 (1st Cir.2010) holding that business records which included data entered by a third party were "so intimately integrated into" the records of the offering party that "they were reliable enough to be admissible." Here Hughes' brokerage records stand alone, that is they are not included in, or part of any other record or document, and as such do not qualify for consideration for the third party records exception.

*Whether Patrick Crowley's opinion should be stricken for the purposes of determining this motion.*

Hughes opposition to this motion is based upon the opinion of his expert, Patrick Crowley. Crowley prepared the late proffered tax returns from the records referred to above.

---

[2] In response to my question during oral argument, counsel for Hughes admitted that many of the numerous brokerage houses that generated the records were out of business and thus 'unavailable' to testify as a custodian.

His affidavit detailing that process was filed as part of his opposition to the Government's motion. The Government asks that I exercise my gate keeper role envisioned by Fed.R.Evid. 702[3] and exclude his opinion. Daubert v. Merrell Dow Pharmaceuticals, Inc. 509 U.S. 579, 589 (1993); Kuhmo Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). They argue that his opinion is unreliable because he has no personal knowledge about Hughes' tax debts and it is based upon the brokerage records and Hughes' sister Jayne's tax returns which are both inadmissible hearsay.

Under Daubert and Kumho courts are required to play a gatekeeper role to ensure that expert evidence is relevant and reliable. "Under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. The primary locus of this obligation is Rule 702, which clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589-90, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993). This gatekeeping role comes with broad discretion in deciding whether to admit or exclude expert testimony. General Electric Co. v. Joiner, 522 U.S. 136, 142 (1997). Clearly, Crowley's testimony will be of assistance to the trier of fact in understanding the evidence. He is an accountant whose qualifications are not at issue for the purposes of summary judgment. What is at issue is whether his testimony is based upon sufficient facts or data and whether his opinion is based

---

[3] Rule 702. Testimony by Expert Witnesses

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

upon reliable principles. That Crowley is relying upon inadmissible hearsay to form his opinion does not, as the Government suggests, make his opinion unreliable. Fed.R.Evid. 703 allows that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. *If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted*. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703 (emphasis supplied).

Fed. R. Evid. 703 contemplates that experts may obtain facts outside of the courtroom through means other than personal perception. Payton v. Abbott Labs, 780 F.2d 147, 156 (1st Cir. 1985). Further, when an expert's proposed testimony is based wholly or in part on facts or data that the witness obtained outside the courtroom by other than personal perception, the court is required to make a preliminary determination of whether the facts upon which the expert relies are of a type that experts in the witness's field reasonably rely. U.S. v. Corey, 207 F.3d 84, 88 (1st Cir. 2000). Here, Crowley has prepared tax returns from records provided to him by Hughes based upon these brokerage records and his sister's tax returns. Hughes argues that these records are particularly suited for consideration in forming Crowley's opinion because regularly kept financial records are particularly trustworthy, they reflect regularly conducted business activity and they are original records. He also points out that the Government made its determination of his tax liability based upon 1099s from the same brokerage houses. I find that the records in question, at least for the purposes of this motion, are regularly relied upon by

experts in the field of tax preparation [4] and that Crowley's affidavit creates a genuine issue of fact. Accordingly, the Defendant's Motion for Summary Judgment is denied.

## Conclusion

It is hereby Ordered:

That the Plaintiff United States' Motion for Summary Judgment (Document 57) is Denied.

*/s/ Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE

---

[4] I make this ruling, as I am required to do, based upon the record before me. I appreciate that the Government has raised issues about the reliability of Crowley's report. Nothing contained herein proscribes the Government from asking for a Daubert hearing in advance of trial to more fully flesh out those issues.