UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil No. 4:12-cv-40025-TSH |
| ) | |
| JAMES B. HUGHES, ) | |
| JAYNE M. HUGHES, ) | |
| and THE MASSACHUETTS ) | |
| DEPARTMENT OF REVENUE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF DECISION AND ORDER FOR JUDGMENT
ON JAMES B. HUGHES**

The Nature of the Case

The United States seeks to collect unpaid tax assessments from James B. Hughes ("Mr. Hughes") for tax years 1999, 2000, 2002, 2003, 2004, and 2006 and to enforce federal tax liens upon three properties, held jointly by Mr. Hughes and his sister, Defendant, Jayne Hughes ("Ms. Hughes"), including their principal residence. [1]

Mr. Hughes denies that he owes any tax for the years at issue. He argues that the United States' assessments are erroneous because they are based on his sales of securities which did not

---

[1] The United States' claims against Mrs. Hughes and her property were severed in November of 2013. (see Documents # 89 and 91)

include his cost bases in the securities, and did not account for the capital loss deductions and capital loss carry forward generated by the sales of two of Mr. Hughes' *investment* properties in 1997. In addition, Mr. Hughes contends that he is entitled to credit toward any tax liability in the amount of withholdings and levies assessed against him ($151,286.00).

### Finding of Fact and Ruling of Law

Mr. Hughes failed to file income tax returns for the years 1995 through 2006, despite having generated income in those years. The United States seeks judgment in the amount of Mr. Hughes unpaid federal tax liabilities for tax years 1999, 2000, 2002, 2003, 2004, and 2006. In an action to collect taxes, the United States bears the initial burden of proof. U.S. v. Tempelman, 111 F.Supp.2d 85, 94 (D.N.H. 2000); see Palmer v. IRS, 116 F.3d 1309, 1312 (9th Cir. 1997). The United States may satisfy its burden by producing Certificate of Assessment and Payment, which create a presumption that the listed tax assessments are correct. See Tempelman, 111 F.Supp.2d at 94; U.S. v. O'Connor, 291 F.2d 520, 526-27 (2d Cir. 1961) (holding that an assessment is presumptive, not conclusive, as to the merits of an assessment).

The United States duly served Deficiency Notices on the defendant for the tax years, and on various dates assessments were made against him for his federal income tax liabilities for those years. At trial, the United States established its prima facie case by introducing Certificates of Assessment and Payment for the tax years. These established a tax liability in the total amount of $1,718,509.88, (including penalties and interest as of 3/2/2015).

Mr. Hughes' late father owned a vacant motel on Cape Cod (the "Cape Cod Property"), fourteen rental properties in Massachusetts and Rhode Island, and his principal residence. Upon their father's death, Mr. Hughes and Ms. Hughes each

inherited 50% of the residence, the rental properties, and the motel. Eight of the inherited properties were seized by the IRS to pay Mr. Hughes' father's estate tax liabilities, while five were seized by various local taxing authorities for unpaid local taxes. In addition during this time Mr. Hughes bought and sold securities.

The United States met its burden of establishing Mr. Hughes' tax liability. However, "[T]he defendant taxpayer may contest the merits of the assessment." Tempelman, 111 F.Supp.2d at 94; O'Connor, 291 F.2d at 527 ("[W]hen the Government seeks the aid of the courts in enforcing the assessment in any form, it opens the assessment to judicial scrutiny in all respects."). Specifically, once the Government has established the tax liability, "the taxpayer bears the burden of proving by a preponderance of the evidence that the assessment was erroneous." Tempelman, 111 F.Supp.2d at 94 (collecting cases). Taxpayers may submit "records, receipts, or statements" or "other evidence" to rebut the presumption. U.S. v. Bigalk, 654 F.Supp.2d 983, 992 (D. Minn. 2009). In addition, the taxpayer may rely on expert testimony because "[w]hether or not the taxpayer is liable for taxes is a question of tax law which often only an expert can answer." U.S. v. Kroll, 547 F.2d 393, 396 (7th Cir. 1977); see U.S. v. Kollman, 105 A.F.T.R.2d 2010-1331 (D. Or. Mar. 4, 2010); U.S. v. Florida, 252 F.Supp. 806, 812 (E.D. Ark. 1965).

In order to mitigate his tax liability, the defendant retained the services of Patrick Crowley, a Certified Public Accountant who prepared substitute tax returns for the tax years in question, and who testified on the defendant's behalf at trial as an expert.

### *Cape Cod Property & Providence Road Property*

Mr. Hughes testified that the Cape Cod Property and a rental property on Providence Road, in Northbridge, Massachusetts were vacant during the tax years in question. He

argues that they should be classified as an investment properties, for which he sustained a loss which he should be allowed to carry forward beyond 1997.

Mr. Crowley testified that the Cape Cod Property was seized by the IRS and sold at an auction in December 1997 for $151,000. Since Mr. Hughes' held the property jointly with Ms. Hughes, Mr. Hughes' portion of the sales price of the Cape Cod Property would have been $75,000. Mr. Crowley testified to his opinion that Mr. Hughes was entitled to a capital loss deduction of $31,500 incurred in connection with the sale of the Cape Cod property in 1997. Mr. Crowley's opinion as to the cost bases of the Cape Cod Property relied upon an appraisal, Mr. Hughes' father's Massachusetts estate tax return, and Ms. Hughes' tax returns. The appraisal set the value of the Cape Cod Property as $213,000. Since Mr. Hughes held the property jointly with Ms. Hughes he claims that his cost basis in the Cape Cod Property is $106,500, thus entitling him to claim the loss.

Mr. Hughes testified that the four-family rental properly located on Providence Road in Northbridge was vacant due to a fire which left it uninhabitable. He seeks a capital loss deduction of $8,000 incurred in connection with the sale of the Providence Road Property in 1997. He also seeks to have the capital loss carried forward. Mr. Crowley testified that the Providence Road property should also be properly classified as an investment property and that he be allowed to carry a loss on the property forward in subsequent tax years. The Providence Road Property was seized by the IRS and sold at an auction for $3,000 on December 5, 1997. Since Mr. Hughes' held the property jointly with Ms. Hughes, Mr. Hughes' portion of the sales price of the Providence Road property is $1,500.

To establish the cost basis of the Providence Road property, Mr. Crowley relied on Mr. Hughes' father's estate tax return (M-706), Ms. Hughes' tax return, and an appraisal, which listed

the value of the property at $19,000. Since Mr. Hughes held the property jointly with Ms. Hughes, he claims that his cost basis in the Providence Road Property is $9,500. Mr. Crowley's opinion with respect to the Cape Cod and Providence Road properties relies upon Mr. Hughes' father's Massachusetts estate tax return, his sister's tax returns and appraisals none of which were admitted into evidence. While Mr. Crowley may base an opinion on inadmissible hearsay evidence, I find that Mr. Crowley's opinion was not based upon reliable data and accordingly, I do not find that Mr. Hughes has proven that he is entitled to claim these losses.

### *Sale of Mr. Hughes' Rental Property at a Loss*

Mr. Hughes and Ms. Hughes jointly held several rental properties. All but two of the properties were seized by the IRS and sold between 1997 and 2006. Originally Mr. Hughes sought to establish losses that he took on the property. However, Mr. Hughes could not establish the losses because he did not carry the losses backward two years as statutorily required. Accordingly, Mr. Hughes concedes that he cannot claim losses relating to the sales of the rental properties.

### *The United States Did Not Prove that Mr. Hughes Received Rental Income*

Mr. Hughes argues that the United States is seeking to tax him on rental income. To the extent that they are, and to the extent that rental income was not part of the Certificate of Assessment, it is the United States' burden to prove additional income. Where the government claims a party is liable for additional tax pursuant to 26 U.S.C. § 6651(a)(1)-(2)—for failing to file a return or pay tax—the government bears the "burden of production with respect to those additions to tax." Rader v. Comm'r, 143 T.C. 19, at *8 (2014).

The United States did not prove that Mr. Hughes received any income from the operation of the rental properties held by Mr. Hughes and Ms. Hughes. At trial, Mr. Crowley testified that he

relied upon Ms. Hughes' tax returns to prepare Mr. Hughes' Schedule Es reporting rental income and expenses.[2] The United States argued successfully that "Ms. Hughes' return cannot be relied upon for substantiation [for the income and expenses reported on Schedule Es] because it's not factual." In addition, the United States stated that the rental income and expenses reported by Mr. Crowley "are not accurate" and that "there's nothing substantive to back up [the] numbers at all." I further agree with the United States that Mr. Hughes was unable to prove that he ever owned any of the rental property. To substantiate a taxpayer's rental income, the United States explained that it would need to "review all of the taxpayer's records . . . [including] income coming into the bank account . . ." (Tr. 4-50:20-23 (Marchand)). Hence, there is no evidentiary support for the expenses or income for the rental properties and none of the expenses or income for the rental properties was properly admitted. Mr. Crowley used the defendant Jayne Hughes' Schedule Es as the sole basis for determining the amount that Mr. Hughes received in rental income for Mr. Hughes' proposed Forms 1040, and the amount of expenses related to the purported rental properties. Tr. 4-12:24 –25. At no point did Crowley ever look to any receipts, cancelled checks, leases, or any other document besides Ms. Hughes' Schedule Es for evidence of rental income or expenses. *Id.*; Tr. 4-12:14 – 15:9.

*The Sale of Securities*

Mr. Hughes' tax liabilities are based in large part upon his sales of securities. From 1997 through 2006, Mr. Hughes conducted approximately 209 sales of stocks and bonds. The United States' used a zero cost basis for these sales and treated 100% of the proceeds of each sale as a short-term capital gain.

---

[2] Schedule E (Form 1040) are used to report income or loss from real estate.

Patrick Crowley's testimony supported and explained the methodology that he utilized in preparing the tax returns used to determine Mr. Hughes' capital gains and losses derived from the sale of securities for each year. Mr. Crowley relied upon: IRS Account Transcript for 2000, IRS Wage and Income Statements for 2002 through 2006, IRS IRMF On-Line Transcript Summaries for years 1997 through 1999, and IRS Wage and Income Statement for 2001.

Mr. Crowley utilized the IRS Account Transcript for 2000 and IRS Wage and Income Statements for the years from 2002 through 2006 as his "starting point" in determining which securities Mr. Hughes sold during the applicable years. Similarly with respect to the IRMF for years 1997, 1998, and 1999, and the Wage and Income Transcript for year 2001, Mr. Crowley testified that Mr. Hughes provided him with the reports and that he relied on them to determine the income that was reported on the tax return for everything with the exception of the ... property." Mr. Crowley used the numbers reported on the tax records as "the basis for the sales" of the securities – both to identify the securities sold and to substantiate their sales price. With the exception of the records for year 2001, the tax records generally indicated "the name of the security ... the quantity of the security, (but not always) and the sales price and sales date on that security," but not the cost basis of the stock.

To determine Mr. Hughes' cost bases in the securities sold, Mr. Crowley utilized Mr. Hughes' original investment records. These records included, brokerage statements including receipts of individual transactions, monthly investment reports, annual investment reports, buy/sell documents, and gain/loss statements. Mr. Crowley demonstrated the reliability of this methodology by detailing the sale of thirty securities sold by Mr. Hughes. In addition to these specific examples, Mr. Crowley used this same methodology to determine the cost basis for all of Mr. Hughes' securities sold during years 1997 through 2006, with the exception of the cost bases

for the sale of Commodore Holdings, and the sales for which he applied a zero cost basis. Mr. Crowley also used a zero cost basis for 21 sales of securities during the tax years at issue when he did not have sufficient documentation to substantiate a cost basis for the security. He classified these 21 sales transactions as short-term capital gains because "the tax rate on the short-term capital gains is at least as high as the tax rate on long-term capital gains, and in some instances it would be higher."

A taxpayer's cost basis in stocks sold is determined by the amount he paid to purchase those stocks. See 26 U.S.C. § 1012 ("The basis of property shall be the cost of such property."). It is the taxpayer's burden to establish the basis for each sale of stock. See Coloman v. Comm'r, 540 F.2d 427, 429 (9th Cir. 1976). A taxpayer may satisfy his burden by introducing evidence showing "details [of] each purchase [including the purchase] date, the number of shares purchased, the name of each stock purchase and the per share price." U.S. v. Youngquist, 111 AFTR 2d 2013-2293, at *7 (D. Or. Apr. 17, 2013). The taxpayer's evidence can consist of "statements" or "letters or emails" from brokerage houses or even the taxpayer's notes about the stocks he purchased and sold."

There is no requirement that the taxpayer submit profit/loss statements from brokerage houses to establish his cost basis in securities. See Youngquist, 111 AFTR 2d 2013-2293, at *7. When a taxpayer establishes his cost bases in securities sold, the assessment – which did not account for such cost bases – must be abated "by the portion of the assessments, penalties, and interest that were based upon" the securities sales. Id. Mr. Crowley's computation of the cost basis for the Commodore Holdings securities sold by Mr. Hughes is the only instance where he made an estimation of the cost basis because it was clear that Mr. Hughes paid for the security,

but the cost basis could not be determined with exactitude. I find that with respect to Commodore Holding Mr. Crowley's estimation was not reliable and therefore disregard it.

For the year 2000, Mr. Crowley was unable to obtain a Wage and Income Transcript containing 1099 reporting information for Mr. Hughes' sales of securities during that year. (Tr. 2-20:9 (Crowley)). Instead, Mr. Crowley was only able to obtain an IRS Account Transcript for Mr. Hughes for the year 2000. (Tr. 2-19:25 (Crowley); Ex. 19). From the Account Transcript and an Examination Change Report, Mr. Crowley formed the opinion that Mr. Hughes had $705,379 worth of sales in the year 2000. Using Mr. Hughes' investment records, Mr. Crowley was able to substantiate the basis for all but $8,084 worth of sales for the year. To account for the $8,084 shortfall, Mr. Crowley entered an unknown capital transaction of $8,084 as a short-term capital gain with a zero cost basis.

The United States was unable to rebut Mr. Hughes' determination of the cost basis of the securities sold or challenge the correctness of the portion of the Assessments based thereon. The United States' expert, Mr. Marchand testified that he did not review the investment records in detail, did not access Mr. Hughes' tax transcripts, and did not "[try] to tick and tie every single sale" of securities by Mr. Hughes. Mr. Marchand did not find evidence that the proceeds of sales were underreported by Mr. Crowley or that Mr. Hughes had any wash sales.

I find that Mr. Hughes has demonstrated by a preponderance of the evidence that that portion of the Assessments based on his sales of securities are erroneous. If the defendant taxpayer rebuts the presumption of correctness afforded to the United States' assessments, "the burden reverts to the IRS to show that its determination was correct." In re Olshan, 356 F.3d 1078, 1084 (9th Cir. 2004) (citing Keogh v. Comm'r, 713 F.2d 496, 501(9th Cir. 1983)). I find that the United States did not rebut Mr. Hughes' showing that the assessments were incorrect.

## ORDER

The United States is hereby ordered to (1) recalculate Mr. Hughes' tax assessments for tax years 1999, 2000, 2002, 2003, 2004, and 2006; and calculate Mr. Hughes' tax liabilities for years 1997, 1998, 2001, and 2005 for the sole purpose of calculating and applying Mr. Hughes' capital loss carry forward to the years at Issue. This recalculation should be done by applying the cost basis for Mr. Hughes sales of securities and classifying such sales as short term Capital gains and losses and long term capital gains and losses according to schedules 1-22 in defendant James Hughes Requested Findings of Fact and Ruling of Law (dx # 134-1), with the exception of Comodore Holdings.

In addition, the recalculations shall take into account taxes paid by Mr. Hughes in the form of federal income tax withholding, federal income taxes paid, and federal tax levies as set forth in the above referenced schedule.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE